# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 0 5 2015
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on March 5, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN | ) ) ) ) ) | |
| BRENDAN McKOWN, a single individual, | ) ) | No. 87722-0 |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| | ) | En Banc |
| SIMON PROPERTY GROUP, INC., a Delaware corporation doing business as Tacoma Mall; IPC INTERNATIONAL CORPORATION, an Illinois corporation, | ) ) ) ) ) | |
| Appellees. | ) ) | Filed  MAR 0 5 2015 |
| | ) | |

MADSEN, C.J.—This case concerns the scope of landowners' or possessors' responsibility for harm that results when strangers commit criminal acts against invitees on business premises. The Ninth Circuit Court of Appeals certified three questions to us regarding this duty under Washington law. In answering these questions, we hold that when a duty is premised on evidence of prior similar acts, a landowner or possessor owes a duty to protect business invitees from third party criminal conduct when such conduct is foreseeable based on past experience of prior similar acts. The prior acts of violence on the business premises must have been sufficiently similar in nature and location to the

criminal act that injured the plaintiff, sufficiently close in time to the act in question, and sufficiently numerous to have put the business on notice that such an act was likely to occur. Based on the limited focus of the questions and the briefing, we do not decide the circumstances under which a duty would arise when the duty is based solely on the business's place or character.

FACTS

On Sunday, November 20, 2005, Dominick S. Maldonado walked into the Tacoma Mall[1] and opened fire on shoppers and mall employees, injuring seven people. Maldonado wore a dark trench coat concealing a MAK-90 rifle and an Intratec Tec-9 pistol, and carried a guitar case filled with ammunition. 1 Excerpts of R. at 18. Brendan McKown, an employee at one of the retail stores, tried to stop Maldonado, but was shot and wounded. After shooting McKown, Maldonado took several hostages before finally surrendering to the police. At the time of the shooting, there were four unarmed security guards on duty and no security cameras. *Id.* at 19-20. While the mall had an intercom system, it was inaudible and inaccessible on weekends, and the security guards were never trained to use it. *Id.* at 19.

McKown brought a negligence action in state court against Simon Property Group Inc., alleging, in part, that Simon failed to exercise reasonable care to protect him from

---

[1] Simon Property Group Inc. is doing business as the Tacoma Mall. Simon is a landowner or possessor (or occupier), a business owner, and the landlord to various businesses with stores in the mall. The case involves premises liability and specifically the question of when a business owes a duty to protect its business invitees from a risk of harm from third party criminal conduct. For convenience, we refer to one in Simon's position and Simon here as either "the landowner" or "the business" without further reference to possessors, occupiers, or landlords.

2

foreseeable criminal harm. Simon removed the case to federal district court, which has diversity jurisdiction under 28 U.S.C. § 1332. After a period of discovery, Simon filed a motion for summary judgment, asserting that the shooting was unforeseeable and that any negligence by Simon was not a proximate cause of McKown's injuries. The trial court found that the evidence raised a genuine issue of material fact as to whether the shooter's criminal conduct was reasonably foreseeable. *See McKown v. Simon Prop. Grp., Inc.*, No. C08-5754BHS, 2011 WL 62144, at *5-6 (W.D. Wash. Jan. 7, 2011) (court order). Accordingly, it denied Simon's motion for summary judgment. *Id.* at *6-8.

Simon moved the court to reconsider its decision, asserting that it had overlooked cases from lower appellate courts in Washington applying what Simon characterized as a "'prior similar acts on the premises'" test for the foreseeability of criminal acts. *McKown v. Simon Prop. Grp., Inc.*, No. C08-5754BHS, 2011 WL 1085891, at *3 (W.D. Wash. Mar. 22, 2011) (court order). Under this test, Simon argued that third-party criminal conduct is reasonably foreseeable "'only if plaintiff presents competent evidence that very similar criminal conduct has occurred on the premises in the past.'" *Id.*

On reconsideration, the trial court vacated its holding and granted Simon's motion for summary judgment. *McKown v. Simon Prop. Grp., Inc.*, No. C08-5754BHS, 2011 WL 1675032, at *5 (W.D. Wash. May 4, 2011) (court order). The court agreed with Simon that Washington appellate decisions have adopted a "'prior similar acts on the premises'" test for determining the foreseeability of criminal acts, and held it was bound to follow this authority because there was "'no convincing evidence that the state

3

supreme court would decide differently.'" *Id.* at *2 (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1206-07 (9th Cir. 1998)).

Applying this test, the court considered evidence of six other shootings and three other gun-related incidents on the Tacoma Mall premises but concluded these were not prior similar acts. *Id.* at *2-3. The court reasoned that these other incidents were significantly different in "nature, scale, and location" from the indiscriminate mass-shooting inside the mall and that they were also remote in time, occurring between 5 and 13 years before the attack that injured McKown. *Id.* at *2-4. Concluding that the incident was therefore not foreseeable as a matter of law, so that Simon owed no duty to protect McKown from such third party criminal behavior, the district court dismissed his claims with prejudice and terminated the action. *Id.* at *5.

On appeal, a panel of the Ninth Circuit Court of Appeals acknowledged it was bound to follow this court's interpretation of Washington law but expressed uncertainty as to the scope of a landowner's duty to protect business invitees from the criminal acts of third persons. *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1088 (9th Cir. 2012). The court noted that in *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 943 P.2d 286 (1997), this court adopted *Restatement (Second) of Torts* § 344 (1965), which imposes a duty on businesses to protect invitees "'from imminent criminal harm and reasonably foreseeable criminal conduct by third persons.'" *McKown*, 689 F.3d at 1092 (quoting *Nivens*, 133 Wn.2d at 292-93). However, the scope of landowner liability for criminal acts appears to have been narrowed after *Nivens* by Washington's intermediate appellate

4

courts. To clarify the scope of a Washington landowner's duty to protect invitees from criminal conduct, the Ninth Circuit Court of Appeals certified to this court the following three questions:

> 1) Does Washington adopt Restatement (Second) of Torts § 344 (1965), including comments d and f, as controlling law? *See Nivens . . . ,* 133 Wash.2d 192 . . . .
>
> 2) To create a genuine issue of material fact as to the foreseeability of the harm resulting from a third party's criminal act when the defendant did not know of the dangerous propensities of the individual responsible for the criminal act, must a plaintiff show previous acts of similar violence on the premises, or can the plaintiff establish reasonably foreseeable harm through other evidence? *See Wilbert v. Metro. Park Dist. of Tacoma,* 90 Wash.App. 304, 950 P.2d 522 (1998); *see also Fuentes v. Port of Seattle,* 119 Wash.App. 864, 82 P.3d 1175 (2004); *Craig v. Wash. Trust Bank,* 94 Wash.App. 820, 976 P.2d 126 (1999); *Raider v. Greyhound Lines, Inc.,* 94 Wash.App. 816, 975 P.2d 518 (1999); *cf. Nivens,* [133 Wn.2d 192]; *Christen v. Lee,* 113 Wash.2d 479, 780 P.2d 1307 (1989); *Passovoy v. Nordstrom, Inc.,* 52 Wash.App. 166, 758 P.2d 524 (1988) . . . ; *Miller v. Staton,* 58 Wash.2d 879, 365 P.2d 333 (1961).
>
> 3) If proof of previous acts of similar violence is required, what are the characteristics which determine whether the previous acts are indeed similar?

*Id.* at 1087-88.

The Ninth Circuit Court of Appeals' opinion, setting forth the three certified questions to this court, makes clear that the focus of the Ninth Circuit's inquiry regarding prior acts is actually twofold: (1) whether this court would apply a "similar acts on the premises" test based on the facts and legal theories argued in the *McKown* case and, if so, (2) "how similar" must such prior acts be to the criminal conduct at issue in order to create a jury question on whether the criminal conduct was reasonably foreseeable. *See* 689 F.3d at 1093. We address these questions herein.

5

Notably, the Ninth Circuit's inquiry seeks a framework to evaluate "previous acts of similar violence on the premises," but the Ninth Circuit did not ask for a framework for evaluating "other evidence" on which the landowner's duty might be based. *Id.* at 1087. While the parties appear to view "other evidence" as meaning "place or character," which is an alternative circumstance to the "past experience" at issue in this case under *Restatement* comment f, the parties offer neither a definition of "place or character" nor a framework for evaluating the circumstances under which "place or character" justify imposing a duty. Instead, the briefing focuses on the history of shootings and gun-related violence at the Tacoma Mall, that is, the "past experience" circumstance under *Restatement* comment f. Thus, in light of the facts of this case, the focus of the parties' briefing, and the resulting framing of the questions by the Ninth Circuit, it does not appear that consideration of the "place or character" alternative in *Restatement* comment f is necessary to answer the certified questions or to resolve this case. Accordingly, we leave for an appropriate future case any inquiry concerning the circumstances under which the "place or character" of a business can give rise to a duty to protect invitees against third party criminal conduct. *See id.* at 1094 (acknowledging that we may "reformulate" the certified questions at our discretion).

ANALYSIS

I.      Foreseeability as Both a Component of Whether Duty Exists
        and a Limitation on the Scope of Duty

We begin by clarifying the role of foreseeability under Washington tort law. McKown confuses duty, which is a question of law for the court, with the scope of duty,

6

which is ordinarily a question for the trier of fact. This confusion arises because McKown treats the matter of foreseeability in this case—an issue concerning whether the landowner has a duty to protect invitees at all—as if it is a question of fact about the scope of duty that should be decided by the jury. But foreseeability as a question of whether a duty is owed is ultimately for the court to decide. *See generally, e.g.,* William H. Hardie, Jr., *Foreseeability: A Murky Crystal Ball for Predicting Liability*, 23 CUMB. L. REV. 349 (1992-93) (discussing role of foreseeability in determining whether a duty is owed in several contexts).

Numerous cases repeat the principle that foreseeability determines the scope of the duty owed and is a question of fact for the jury. But that inquiry is not the same as the one here. The existence of a legal duty is a question of law for the court. *See, e.g., Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006) ("[i]n a negligence action, the determination of whether an actionable duty was owed to the plaintiff represents a question of law to be decided by the court"); *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005) ("existence of a legal duty is a question of law and 'depends on mixed considerations of logic, common sense, justice, policy, and precedent'" (internal quotation marks omitted) (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243, 35 P.3d 1158 (2001))); *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 474-75, 951 P.2d 749 (1998); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994).

As this court has observed, once "a duty is found to exist from the defendant to the plaintiff then concepts of foreseeability serve to define the scope of the duty owed." *Schooley*, 134 Wn.2d at 475. Cases often follow by saying this determination is a factual question for the jury. This court has previously explained:

> "Foreseeability is . . . one of the elements of negligence; it is more appropriately attached to the issues of whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent."

*Maltman v. Sauer*, 84 Wn.2d 975, 980, 530 P.2d 254 (1975) (emphasis omitted) (quoting *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969)).

In *Christen*, the court further explained foreseeability's limitation on the scope of duty:

> The concept of foreseeability limits the scope of the duty owed. We have held that in order to establish foreseeability "the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant." The limitation imposed thereby is important because, as this court has previously observed, "a negligent act should have some end to its legal consequences." Foreseeability is normally an issue for the jury, but it will be decided as a matter of law where reasonable minds cannot differ.

113 Wn.2d at 492 (footnote and citations omitted) (quoting *Maltman*, 84 Wn.2d at 981; *Hunsley v. Girard*, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976)).

Thus, we have held that foreseeability can be a question of whether duty exists and also a question of whether the harm is within the scope of the duty owed. In the latter sense, it is a question of fact for the jury. "'Generally, the duty to use ordinary care is

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

bounded by the foreseeable range of danger.'" *Burkhart v. Harrod*, 110 Wn.2d 381, 395, 755 P.2d 759 (1988) (quoting *Wells v. City of Vancouver*, 77 Wn.2d 800, 803, 467 P.2d 292 (1970)).

This distinction is clear in *Hutchins v. 1001 Fourth Avenue Assocs.*, 116 Wn.2d 217, 226, 802 P.2d 1360 (1991), when we discussed the difference between an inquiry into whether the landowner had notice of criminal activity sufficient to give rise to a duty, and foreseeability of harm as a limitation on the scope of a defendant's duty once duty is determined. The first inquiry described in *Hutchins* is whether a duty to protect against third party criminal conduct is owed at all. The second inquiry described in *Hutchins*, foreseeability of harm as a limit on the scope of the duty, considers whether the harm sustained is reasonably perceived as being within the general field of danger covered by the duty owed by the defendant. *Id.*; *see also Christen*, 113 Wn.2d at 491-92. In this way, foreseeability plays a role in both the legal and factual inquiries regarding duty and its scope.

II.    *Restatement (Second) of Torts § 344 (1965)*

In answer to the first certified question, we reiterate that *Restatement (Second) of Torts* section 344 is generally consistent with Washington law, and that comments d and f generally describe the contours of the duty owed. *See Nivens*, 133 Wn.2d at 204-05. However, this court has followed a careful course when considering imposing liability on landowners or possessors in general. In 1986, the court was asked to abandon traditional premises liability standards of care owed by owners or occupiers of land in favor of a

9

No. 87722-0

"standard of reasonable care under all the circumstances." *Younce v. Ferguson*, 106 Wn.2d 658, 662, 724 P.2d 991 (1986). We declined to abandon the traditional classifications in favor of "a standard with no contours." *Id.* at 666. The reasons for adhering to the traditional standards, included stability and predictability of the law, disinclination to delegate complex policy decisions to a jury, and the danger that "the landowner could be subjected to unlimited liability." *Id.* Thus, "a possessor of land has no duty as to all others under a generalized standard of reasonable care under all the circumstances." *Hutchins*, 116 Wn.2d at 221.[2]

A little over a decade later we recognized that a business owes a duty to its invitees to protect them from "reasonably foreseeable" criminal acts of third persons.[3] In

---

[2] We have continued to address whether a duty is owed under traditional premises liability standards. *See, e.g., Afoa v. Port of Seattle*, 176 Wn.2d 460, 467, 469, 296 P.3d 800 (2013); *Cregan v. Fourth Mem'l Church*, 175 Wn.2d 279, 283 n.2, 285 P.3d 860 (2012); *Curtis v. Lein*, 169 Wn.2d 884, 890, 239 P.3d 1078 (2010); *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 125, 52 P.3d 472 (2002); *Iwai v. State*, 129 Wn.2d 84, 90-95, 915 P.2d 1089 (1996); *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 49-50, 914 P.2d 728 (1996); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994); *Hutchins*, 116 Wn.2d at 221.

Occasionally, the common law principles have been altered by statute, as has occurred with the enactment of this state's recreational use statute. *See Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 41-42, 846 P.2d 522 (1993).

[3] We do not "overlook[] this aspect of *Nivens*" nor is our noted reliance on *Hutchins* improper, as the concurrence contends. *See* concurrence (Stephens, J.) at 8 n.3. In *Nivens*, we recognized a limited special relationship exception for businesses to the general common law rule that a person owes no duty to protect others from criminal acts of third persons. We held that "a business owes a duty to its invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." *Nivens*, 133 Wn.2d at 205. But we also observed that the recognition of the existence of such a duty does not end the inquiry, stating that "[n]o duty arises unless the harm to the invitee by third persons is *foreseeable*." *Id.* (emphasis added). We further observed that "Washington courts have been reluctant to find criminal conduct foreseeable." *Id.* at 205 n.3. We did not undertake an analysis of foreseeability in *Nivens. Id.* at 205. Herein, we discuss *Hutchins* in the context of the historical development of premises liability in Washington and for its analysis of the role that foreseeability plays in

10

*Nivens*, we concluded that *Restatement (Second) of Torts* section 344 is generally consistent with Washington law and that comments d and f generally describe the contours of the duty owed. *Nivens*, 133 Wn.2d at 204. We did not explore the limits of this duty in *Nivens* because we had no cause to do so in the case. We did, however, caution against treating the business as a "guarantor of the invitee's safety from all third party conduct on the business premises," saying that it would be "too expansive a duty." *Id.* at 203.

Although, in *Nivens*, the court agreed that section 344 is generally consistent with state law, we have also continued to recognize that the limited duty of landowners to protect invitees from third parties is an exception to the general rule that there is no duty to protect others from the criminal acts of third parties. *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 195-96, 15 P.3d 1283 (2001); *Nivens*, 133 Wn.2d at 199; *Hutchins*, 116 Wn.2d at 223; *Petersen v. State*, 100 Wn.2d 421, 426, 671 P.2d 230 (1983). It is the special relationship between a business and its business invitee that under Washington law may lead to the duty to protect the invitee from the criminal acts of third persons.[4]

---

determining both duty and scope of liability, thus filling in where *Nivens* left off. *See infra* pp. 9-11. Accordingly, we neither ignore *Nivens* nor mistakenly rely on *Hutchins*, as the concurrence contends. In any event, the salient point here is that both our majority and Justice Stephens' concurrence rely on and reiterate *Nivens* in answering the first certified question affirmatively. *See infra* p. 9; concurrence (Stephens, J.) at 9.

[4] In *Robb v. City of Seattle*, 176 Wn.2d 427, 295 P.3d 212 (2013), we considered another exception. A duty to protect another from third party criminal acts is owed when the actor's own affirmative acts create or expose the plaintiff to a recognizable high degree of risk of harm. RESTATEMENT (SECOND) OF TORTS § 302B cmt. e (1965). Foreseeability alone is an insufficient basis for imposing this duty. *Robb*, 176 Wn.2d at 435. And we have emphasized that section 302B applies only when an unusual risk of harm was created. *Kim*, 143 Wn.2d at 196.

11

The court has continued to recognize under premises liability standards that the duty to protect invitees is not a broad duty but a limited one, in recognition that it is often unfair to place the burden of third parties' criminal conduct on a business.

This is consistent with section 344 of the *Restatement (Second) of Torts*, which states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
> (a)  discover that such acts are being done or are likely to be done, or
> (b)  give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The language of section 344 necessarily requires a narrow interpretation of a landowner's potential duty. In subsection (a), the phrase "such acts" refers to its antecedent—"accidental, negligent, or intentionally harmful acts of third persons." This language narrows the duty inquiry to whether *the specific acts* in question were foreseeable rather than whether the landowner should have anticipated any act from a broad array of possible criminal behavior or from past information from any source that some unspecified harm is likely.

Comment d to section 344 clarifies that business owners are generally not responsible for the harm that results when strangers commit criminal acts on the business premises:

> A . . . *possessor of land who holds it open to the public for entry for his business purposes is not an insurer of the safety of such visitors against the acts of third persons* . . . . He is, however, under a duty to exercise

12

reasonable care to give them protection. In many cases a warning is sufficient care if the possessor reasonably believes that it will be enough to enable the visitor to avoid the harm, or protect himself against it. There are, however, many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor.

RESTATEMENT (SECOND) OF TORTS § 344 cmt. d (1965) (emphasis added).

Comment f further provides that to the extent that a duty is owed, it is a limited duty based on foreseeability. Accordingly, foreseeability is not merely used to determine the scope of a duty already owed, it is a factor in determining whether the duty is owed in the first place. Comment f explains:

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person *are occurring, or are about to occur*. He may, however, know or have reason to know, *from past experience*, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. *If the place or character of his business*, or *his past experience*, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*Id.* cmt. f (emphasis added).

Thus, comment f, like section 344 itself, contemplates two kinds of situations that may give rise to a duty—the first is where the landowner knows or has reason to know of immediate or imminent harm, and the second is where the possessor of land knows, or has reason to know, based on the *landowner's past experience*, the *place* of the business,

13

or the *character* of the business, there is a likelihood that harmful conduct of third parties will occur on his premises.

In *Nivens*, the court declined to "undertake an analysis of . . . foreseeability" because the plaintiff "did not base his case on a general duty of a business to an invitee." *Nivens*, 133 Wn.2d at 205. However, we have previously considered whether the "place" of a business within a high-crime urban area justifies imposing a duty on the business to protect others from third party criminal acts. As a policy matter, we rejected the idea that location of the premises in an urban area with a high incidence of crime favors imposing a duty. *Hutchins*, 116 Wn.2d at 236. "[I]f the premises are located in an area where criminal assaults often occur, imposition of a duty could result in the departure of businesses from urban core areas—an undesirable result." *Id.*; *accord Kim*, 143 Wn.2d at 199 ("this court has rejected utilization of high crime rates as a basis for imposing a tort duty"); *see also Boren v. Worthen Nat'l Bank of Ark.*, 324 Ark. 416, 428, 921 S.W.2d 934 (1996) ("[w]e . . . cannot say that it would be appropriate as a matter of policy to impose a higher duty on business owners who are willing to provide their services in 'high crime areas' or 'near a housing project' — most commonly the areas in which low and moderate income residents are to be found"); *McNeal v. Henry*, 82 Mich. App. 88, 90 n.1, 266 N.W.2d 469 (1978) ("[s]ome of our big cities have more than their share of destructive and violent persons, young and old, who roam through downtown department stores and other small retail businesses stealing and physically abusing legitimate patrons . . . . We fear that to hold businessmen liable for the clearly unforeseeable third-party

14

torts and crimes incident to these activities would eventually drive them out of business"); *Stafford v. Church's Fried Chicken, Inc.*, 629 F. Supp. 1109 (E.D. Mich. 1986) (the plaintiff argued that since the restaurant where the criminal assault occurred was in a high crime area, the business knew security was necessary to protect the patrons; court rejected the argument, saying that requiring the business to provide police protection against criminal third parties may drive businesses out of those neighborhoods). Although we have rejected the location of a business within a high-crime urban area as imposing a duty to protect from third party criminal conduct, we have not yet considered whether the character of a business or another location of a business, standing alone, could invoke such a duty.

As this discussion shows, we answer the first certified question yes. Washington generally adopts *Restatement (Second) of Torts* section 344 comments d and f, as explained above. As for the second certified question, we answer no, as qualified by our discussion to this point.[5] While proving acts of similar violence is not the only way for a plaintiff to establish a duty as provided in the *Restatement* and comment sections that we adopted in *Nivens*, it is the one we focus on here because that is the only basis for liability that the parties meaningfully address and the only one that the Ninth Circuit has asked us

---

[5] The second certified question is actually in two parts: "must a plaintiff show previous acts of similar violence on the premises, *or* can the plaintiff establish reasonably foreseeable harm through other evidence?" *McKown*, 689 F.3d at 1087 (emphasis added). We answer no to the first part and yes to the second part of the second certified question.

15

to clarify.[6] Accordingly, we address the third certified question concerning the particulars of the prior similar incidents test.[7]

---

[6] Because the questions posed by the Ninth Circuit and the arguments made by McKown focus on prior incidents of violence, we reserve comment on the circumstances under which a business's character, without more, would support landowner liability. Here, McKown's briefing acknowledges that section 344 comment f describes three circumstances under which a duty may arise: where the possessor knows or has reason to know that the acts of the third person are occurring or about to occur; the possessor knows or has reason to know based on past experience that there is a likelihood of conduct on the part of third persons in general likely to endanger a visitor; and if the place or character of the possessor's business, or his past experience, is such that he would reasonably anticipate careless or criminal conduct by third persons, he may be under a duty to take precautions against it. *See* Br. of Appellant McKown at 19; *see also* RESTATEMENT (SECOND) OF TORTS § 344 cmt. f (1965). While McKown argues that consideration of the "place or character" of a business is a distinct, alternative method of establishing reasonable foreseeability of harm, he offers no test, criteria, or parameters regarding how "character" is to be established or assessed. *See* Br. of Appellant McKown at 19. He describes the Tacoma Mall as a "'soft target'" "whose 'place or character' made the harm reasonably foreseeable." *Id.* at 20. But aside from this bald assertion, he offers no explanation as to how or why the "character" of the mall necessarily made the mass shooting in this case "reasonably foreseeable." *Id.*

Notably, a recent Federal Bureau of Investigation study of active shooter incidents from 2000 to 2013 does not suggest that malls are any more susceptible to mass shootings than are other public spaces. J. Pete Blair & Katherine W. Schweit, TEX. STATE UNIV. & U.S. DEP'T OF JUSTICE FED. BUREAU OF INVESTIGATION, *A Study of Active Shooter Incidents in the United States between 2000-2013* (2014), *available at* http://www.fbi.gov/news/stories/2014/september/fbi-releases-study-on-active-shooter-incidents/pdfs/a-study-of-active-shooter-incidents-in-the-u.s.-between-2000-and-2013). The study of active shooter incidents shows that while 45.6 percent of incidents occur in places of commerce, 27.5 percent occur in businesses open to the public, 14.4 percent occur in businesses closed to the public, and 3.8 percent occur in malls, which incidentally equals the number of incidents in houses of worship. *Id.* at 13. Educational institutions account for 24.4 percent of active shooter incidents, with another 10.0 percent on government property, 9.4 percent in public spaces, 4.4 percent in residences, and 2.5 percent in health care facilities. *Id.* In light of these statistics and without a concrete proposal for determining the parameters of a duty created by the "character" of a business, we leave that question for another day.

[7] Given the Ninth Circuit's request for clarification concerning how prior similar incidents are to be considered, we address the third certified question despite its being presented as a contingent inquiry.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

III.   Prior Similar Incidents

In order to establish a genuine issue of material fact concerning a landowner's obligation to protect business invitees from third party criminal conduct under the prior similar incidents test, a plaintiff must generally show a history of prior similar incidents on the business premises within the prior experience of the possessor of the land.

We reject a broad notice rule requiring a landowner to protect business invitees from third party criminal conduct. We recognize the wisdom of the Supreme Court of Michigan when it stated:

> Subjecting a merchant to liability solely on the basis of a foreseeability analysis is misbegotten. Because criminal activity is irrational and unpredictable, it is in this sense invariably foreseeable everywhere. However, even police, who are specially trained and equipped to anticipate and deal with crime, are unfortunately unable universally to prevent it. This is a testament to the arbitrary nature of crime. Given these realities, it is unjustifiable to make merchants, who not only have much less experience than the police in dealing with criminal activity but are also without a community deputation to do so, effectively vicariously liable for the criminal acts of third parties.

*MacDonald v. PKT, Inc.*, 464 Mich. 322, 335, 628 N.W.2d 33 (2001).

Under a broad notice rule, foreseeability would become an all-expansive standard for imposing a duty on a business to protect invitees from criminal assaults of third parties on the business premises.[8] A broad notice rule or a totality of the circumstances

---

[8] Relying too heavily on foreseeability as an element of a tort claim has been addressed and harshly criticized. *See generally*, *e.g.*, Hardie, *supra*, at 402 ("[t]he harm arises when courts take foreseeability seriously and try to apply it as an element of the cause of action. . . . Using foreseeability in a flexible, case-by-case analysis creates uncertainty by giving courts the power and method to decide cases without external restraint"). As the California State Supreme Court once cogently observed, "[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially

17

test would improperly shift the duty to protect the public against crime from the government to private businesses.

Decisions from the Courts of Appeals have recognized that such standards would fail to comport with this court's precedent. If a particular type of crime has occurred repeatedly on its premises in the recent past, a business may have reason to anticipate that such a crime will happen again. *See, e.g., Johnson v. State*, 77 Wn. App. 934, 943, 894 P.2d 1366 (1995) (foreseeability of rape of college student in front of her dormitory was a question of fact where there had been numerous rapes on campus each year). But if the criminal act that injures the plaintiff is not sufficiently similar in nature and location to the prior act(s) of violence, sufficiently close in time to the act in question, and sufficiently numerous, then the act is likely unforeseeable as a matter of law under the prior similar incidents test.

In *Wilbert*, 90 Wn. App. at 306, a man was shot at a private dance in a venue owned and rented out by the Metropolitan Park District. The court explained, "Ordinarily, foreseeability is a jury question and a criminal act can be held unforeseeable as a matter of law only 'if the occurrence is so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" *Id.* at 308 (quoting *Johnson*, 77 Wn. App. at 942). Citing both *Nivens* and *Christen*, the court noted that "[w]here no evidence is presented that the defendant knew of the dangerous propensities of the individual responsible for the crime, and there is no history of such crimes occurring on the

_____

acceptable limit on recovery of damages for that injury." *Thing v. La Chusa*, 48 Cal. 3d 644, 668, 771 P.2d 814, 257 Cal. Rptr. 865 (1989).

18

premises, the courts have held the criminal conduct unforeseeable as a matter of law." *Id.* at 309. The Court of Appeals, Division Two, held that the shooting was not foreseeable as a matter of law in part because the appellants offered no evidence that there had been similarly violent episodes at the venue in the past. *Id.* at 306, 309.

In *Raider*, 94 Wn. App. at 817-18, the appellant was injured in a racially motivated shooting at a Greyhound bus station. Even though the bus terminal was a high crime area, the court found that the attack did not bear any relationship or similarity to past crimes that had occurred there, including a shooting. *Id.* at 820. Accordingly, the Court of Appeals, Division Three, held that the incident was unforeseeable as a matter of law. *Id.*

In *Tortes v. King County*, 119 Wn. App. 1, 6, 84 P.3d 252 (2003), a Metro bus passenger was injured when another passenger shot and killed the driver and the driverless bus plunged off a bridge. The Court of Appeals, Division One, held that the incident was unforeseeable as a matter of law because evidence did not support the fact of prior similar crimes on other buses. *Id.* at 8.

In *Fuentes*, 119 Wn. App. at 866, the appellant was injured when her car was carjacked while she was waiting in the airport's pickup drive for passengers. The carjacker was fleeing Port of Seattle police at the time. The Court of Appeals, Division One, held that the incident was unforeseeable as a matter of law because history of an assault in the parking garage and a car prowling problem were insufficient to establish foreseeability. *Id.* at 870-71.

19

These cases properly apply *Nivens* and support our holding here that when the prior similar incidents test is used, when a landowner or possessor's duty to protect business invitees from third party criminal conduct arises from his prior experience, that duty generally requires a history of prior similar incidents on the business premises within the prior experience of the landowner or possessor's business.[9]

## CONCLUSION

In answer to the first certified question, the *Restatement (Second) of Torts* section 344 is generally consistent with Washington law and comments d and f generally describe the contours of the duty owed. *See Nivens*, 133 Wn.2d at 204-05. In answer to the Ninth Circuit's second inquiry, proving acts of similar violence is not the only way for a plaintiff to establish a duty as provided in the *Restatement*. However, it is the one we focus on here because prior history of violence is really the only basis for liability that

---

[9] A number of other jurisdictions have employed forms of the prior similar incidents approach, though some of them employ that approach to the exclusion of others. *See, e.g., Baptist Mem'l Hosp. v. Gosa*, 686 So.2d 1147, 1152-53 (Ala. 1996); *Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal. 4th 666, 679, 863 P.2d 207, 25 Cal. Rptr. 2d 137 (1993), *disapproved on another point in Reid v. Google, Inc.*, 50 Cal. 4th 512, 527 n.5, 235 P.3d 988, 113 Cal. Rptr. 3d 327 (2010) (holding that a high degree of foreseeability is required to impose a duty to hire security guards and that "the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises"); *Drayton v. Kroger Co.*, 297 Ga. App. 484, 485, 677 S.E.2d 316 (2009); *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 519, 429 N.Y.S.2d 606 (1980) (applying section 344 and relying solely on prior similar incidents rather than place or character); *Bray v. St. John Health Sys., Inc.*, 2008 OK 51, 187 P.3d 721, 723-25 (adopting the entirety of a section 344, comment f approach, taking into account prior similar incidents which had recently occurred on the property along with place and character); *Trammel Crow Cent. Texas, Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008) (holding that "'[f]oreseeability is established through evidence of specific previous crimes on or near the premises'" (internal quotation marks omitted) (quoting *Timberwalk Apts. Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1988))); *Gupton v. Quicke*, 247 Va. 362, 364, 442 S.E.2d 658 (1994) (test includes a prior similar incidents component but is stricter because it adds other requirements, i.e., that plaintiff has to show that the third party is a known aggressor or there is imminent danger of which the landowner is aware).

20

No. 87722-0

the parties meaningfully address and the only one that the Ninth Circuit has asked us to clarify. In answer to the court's third question, we hold that where a landowner's obligation to protect business invitees from third party criminal conduct arises from past experience, the plaintiff must generally show a history of prior similar incidents on the business premises within the prior experience of the possessor of the land. The prior acts of violence on the business premises must have been sufficiently similar in nature and location to the criminal act that injured the plaintiff, sufficiently close in time to the act in question, and sufficiently numerous to have put the business on notice that such an act was likely to occur. This prior similar incidents approach best conforms to comment f and, more importantly, assures that businesses will be exposed to liability on this basis only when they have past experience of criminal conduct that makes similar conduct on the business premises foreseeable.

We reserve comment on the circumstances under which the place or character of a business, without more, can give rise to a duty to protect invitees against third party criminal conduct.

21

No. 87722-0

_Madsen, C.J._

WE CONCUR:

_Gordon McCloud, J._

_J.M. Johnson, J.P.T._

*McKown v. Simon Property Group, Inc., et al.*

No. 87722-0

STEPHENS, J. (concurring)—The central question before us is whether a plaintiff bringing suit against a landowner must present evidence of prior similar acts of violence on the premises as a "prerequisite" to finding that criminal acts on the premises were foreseeable. *See McKown v. Simon Prop. Grp., Inc.*, 686 F.3d 1086, 1093 (9th Cir. 2012) (court order) (quoting *Wilbert v. Metro. Park Dist. of Tacoma*, 90 Wn. App. 304, 309, 950 P.2d 522 (1998)). The majority does not clearly answer this question. On the one hand, it says such evidence is not required. *See* majority at 20 ("In answer to the Ninth Circuit's second inquiry, proving acts of similar violence is not the only way for a plaintiff to establish a duty as provided in the *Restatement*." (citing RESTATEMENT (SECOND) OF TORTS § 344 (1965)). On the other hand, in answering certified question three—not question two—the majority seems to endorse the strict prior similar acts test adopted by the Court of Appeals cases cited in the Ninth Circuit's order.[1]

---

[1] The majority justifies its approach on the ground that only a prior similar acts theory was advanced in this case, but neither the parties nor the Ninth Circuit think so. Obviously, the briefing focuses on prior similar acts—but this is because the trial court

I would answer certified questions one and two directly: yes and no. While these are the same answers the majority seems to give, much of its unnecessary discussion of question three seems to undercut its stated answers. Because the third certified question is conditional, asking for the characteristics of a prior similar acts test only "[i]f proof of previous acts of similar violence is required," *McKown*, 689 F.3d at 1087, I would not answer it. The majority's discussion of this question is dicta.

## ANALYSIS

This case centers on our decision in *Nivens v. 7–11 Hoagy's Corner*, 133 Wn.2d 192, 943 P.2d 286 (1997), and subsequent decisions from the Court of Appeals that have applied a prior similar acts test to determining foreseeability. The certified questions begin from the premise that Simon Property Group Inc., a business owner, owes a duty of reasonable care to McKown, a business invitee.[2]

The majority criticizes McKown for confusing "duty, which is a question of law for the court, with the scope of duty, which is ordinarily a question for the trier of fact," and insists that the certified questions ask about legal duty. Majority at 6-7.

---

refused to submit the case to the jury in the absence of such evidence. *See McKown*, 689 F.3d at 1093 (noting trial court "stated the test this way: 'there is an issue for the jury as to whether the third party's criminal conduct is reasonably foreseeable *only if* plaintiff presents competent evidence that similar criminal conduct has occurred on the premises in the past'"). It was in light of this ruling that the questions before us were framed. The Ninth Circuit needs to know whether evidence of prior similar acts is a *prerequisite* to getting a case out of the gates. Unless it is, there is no need to expound on the forms such evidence might take.

    [2] "For the purpose of its summary judgment motion . . . , Simon assumed, without admitting, that McKown was its invitee." Br. of Appellees Simon Prop. Grp., Inc. & IPC Int'l Corp. at 8 n.1.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

This is a critical mistake. The Ninth Circuit and the parties all understand, as did the trial court, that the issue before us concerns *factual* foreseeability, i.e., the scope of the duty arising out of the special relationship between Simon and McKown. *See McKown*, 689 F.3d at 1092 ("It is the scope of that duty that is dispositive."), 1093 (quoting trial court as stating, "'there is an issue for the jury as to whether the third party's criminal conduct is reasonably foreseeable *only if* plaintiff presents competent evidence that similar criminal conduct has occurred on the premises in the past'" (emphasis added)); *see also* Br. of Appellees Simon Prop. Grp., Inc. & IPC Int'l Corp. at 1 (describing certified questions as concerning "the scope of the duty that a business owes its invitees to protect them from criminal acts of third persons, and the foreseeability of such acts"). Certified question two is framed squarely in terms of factual foreseeability, asking what evidence is needed "[t]o create a genuine issue of material fact as to the foreseeability of the harm." *McKown*, 689 F.3d at 1087.

Such foreseeability is ordinarily a question for the trier of fact unless there are no genuine issues of material fact and reasonable minds could not disagree. *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989); *see also Nivens*, 133 Wn.2d at 205; *Hansen v. Friend*, 118 Wn.2d 476, 483, 824 P.2d 483 (1992); *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 50, 929 P.2d 420 (1997). A court should reject foreseeability as a matter of law only when the harm is "'so highly extraordinary or improbable'" that no reasonable person could be expected to anticipate it. *Seeberger*

-3-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*v. Burlington N. R.R.*, 138 Wn.2d 815, 823, 982 P.2d 1149 (1999) (quoting *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 323, 255 P.2d 360 (1953)). The federal court seeks guidance about whether evidence of prior similar acts on the premises is a prerequisite under Washington law to create a genuine issue of material fact. Part of this inquiry turns on whether this court follows the analysis set forth in section 344 of the *Restatement.*

### (1) Does Washington adopt Restatement (Second) of Torts section *344, including comments d and f, as controlling law?*

I agree with the majority that the answer to certified question one is yes. In Washington, the special relationship between a business and its invitee gives rise to a duty on the part of the business to exercise reasonable care to protect invitees from likely harm caused by third persons. *Nivens*, 133 Wn.2d at 202 ("What we have impliedly recognized in earlier cases, we now explicitly hold: a special relationship exists between a business and an invitee."). In determining the existence and scope of the duty and the standard of care necessary to satisfy it, section 344 of the *Restatement*, and comments d and f thereto, provide the appropriate analysis because they are "consistent with and a natural extension of" our law. *Id.* at 204-05.

Section 344 of the *Restatement* states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the *accidental, negligent, or intentionally harmful acts of third persons* or animals, and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are *being done or are likely to be done,* or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

-4-

(Emphasis added.)

Recognizing that it would be an impossible burden on businesses to protect invitees from every risk of harm caused by third parties, the *Restatement* limits the scope of the duty owed. Comment f explains:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT § 344 cmt. f. Thus, while the existence of a special relationship triggers a legal duty to protect, the *Restatement* recognizes limits on the scope of that duty. Liability cannot be imposed unless the landowner is on notice of likely harm.

Even when the business owner owes a duty under the circumstances, comment d explains that this does not make the business owner the insurer of an invitee's safety but merely requires the exercise of reasonable care:

> A . . . possessor of land who holds it open to the public for entry for his business purposes is not an insurer of the safety of such visitors against the acts of third persons . . . . He is, however, under a duty to exercise reasonable care to give them protection. In many cases a warning is sufficient care if the possessor reasonably believes that it will be enough to enable the visitor to avoid the harm, or protect himself against it. There are, however, many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor.

For the text of this opinion, go to http://www.lexis.com/clients/wareports/.

*Id.* cmt. d.

The principles set forth in section 344 of the *Restatement* are consistent with Washington precedent. Washington courts have long recognized that the special relationship between a business owner and its invitees triggers a duty on the part of the owner to protect invitees from harm arising from the foreseeable conduct of third parties. *See Niece,* 131 Wn.2d at 44 (quoting *Hutchins v. 1001 Fourth Ave. Assocs.,* 116 Wn.2d 217, 228, 802 P.2d 1360 (1991) (citing PROSSER AND KEETON ON THE LAW OF TORTS 383 (W. Page Keeton ed., 5th ed. 1984)); *Hutchins,* 116 Wn.2d at 223-24 (noting that "the usual case where a duty may be found to protect others from third party criminal assault involves a business and its invitee"); *Passovoy v. Nordstrom, Inc.,* 52 Wn. App. 166, 172-73, 758 P.2d 524 (1988) (holding a business owes a duty to protect invitees from reasonably foreseeable harm by third persons); *Miller v. Staton,* 58 Wn.2d 879, 883, 365 P.2d 333 (1961) (holding that a business owner "owes the duty to his guests to exercise reasonable care to protect them from injury at the hands of a fellow guest"); *Gurren v. Casperson,* 147 Wash. 257, 258-59, 265 P. 472 (1928) (holding a business owner must protect invitees against injury caused by third persons).

In *Nivens,* we recognized that because an invitee "entrusts himself or herself to the control of the business owner over the premises and to the conduct of others on the premises," this special relationship imposes a duty on business owners to exercise reasonable care to protect their customers "from imminent criminal harm

-6-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and reasonably foreseeable criminal conduct by third persons." 133 Wn.2d at 202, 205. To delineate the scope of this duty, we looked to section 344 of the *Restatement* because it is "consistent with and a natural extension of Washington law" and said we "expressly adopt it." *Id.* at 204; *see Passovoy*, 52 Wn. App. at 172-73 (first endorsing and applying the *Restatement* rule); *see also* 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 1.19, at 38-39 (3d ed. 2006) (noting that *Nivens* "described the nature of the duty that is owed by adopting § 344 of the Restatement").

Simon argues that despite the language in the opinion, the court in *Nivens* did not actually adopt the *Restatement* and its comments because the plaintiff in that case did not rely on the general duty of care owed to him as a business invitee. Simon reads *Nivens* too narrowly. Even though the plaintiff in *Nivens* argued only that "a business generally owes a duty to provide security personnel to prevent criminal behavior on the business premises," 133 Wn.2d at 205, our decision settled more than the bare question of whether a business owes a freestanding "duty" to provide armed guards. Before we could reach Nivens's specific claim about a business's alleged duty to provide security personnel, we first had to address the threshold question of whether a business owes *any* duty to invitees with respect to third-party acts. In the course of resolving this question, we recognized that "in certain circumstances the duty arising out of the special relationship between a business and an invitee described by section 344 of the RESTATEMENT may best be met by

providing security personnel as part of the reasonable steps to forestall harm to invitees." *Id.* at 206; *see also id.* at 208 (Sanders, J., dissenting) (observing that "hiring security guards may be one of many possible ways a business may discharge its general duty to protect invitees from third persons' reasonably foreseeable criminal conduct").[3] What we declined to reach was the issue of whether the defendant was required to hire guards or take other precautions to discharge this duty because that question relates to the *standard of care* and Nivens did not argue that the general duty had been breached. *Nivens*, 133 Wn.2d at 205. Thus, while some of the discussion in *Nivens* seems to use the term "duty" to describe both duty and the standard of care, there can be little doubt that adoption of section 344 of the *Restatement* was necessary to the court's analysis.

A word should be said about the *Restatement*'s use of the term "likely" and the concept of "foreseeability." No case suggests any substantive difference between our common law rule and section 344 of the *Restatement*. While in theory

---

[3] The majority overlooks this aspect of *Nivens*. It mistakenly relies on *Hutchins* for the proposition that a landowner owes no generalized duty to protect against criminal assaults. *See* majority at 10, 14. But *Hutchins* involved the question of liability to a *trespasser*, not an invitee, and thus did not involve any consideration of reasonable care. The court was careful to distinguish situations, such as this one, involving special relationships. *Hutchins*, 116 Wn.2d at 227-29 (discussing cases involving special relationships giving rise to duty of reasonable care); *see also Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 75, 124 P.3d 283 (2005) (Madsen, J., concurring/dissenting in part) (explaining *Hutchins* "discuss[ed] situations where a defendant has a special relationship with a foreseeable victim giving rise to a duty to protect the person from physical injury resulting from the conduct of third parties"). Thus, *Hutchins* provides no support for the view that foreseeability requires evidence of prior similar acts. As we made clear in *Nivens*, this rule "does not apply" in light of the affirmative duty of reasonable care that exists in the business owner/invitee context. 133 Wn.2d at 203.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

an act might be described as foreseeable without any showing that its occurrence is likely, this court has never equated foreseeability with the bare possibility of harm or drawn a distinction between the common law and the *Restatement*'s test. To the contrary, the court in *Nivens* clearly connected our precedent defining "foreseeability" with the test set forth in section 344 of the *Restatement*. *Id.* at 205 & n.3 (describing the *Restatement*'s test as imposing the duty to protect invitees "from imminent criminal harm and reasonably foreseeable criminal conduct by third persons"; rejecting liability for criminal conduct that is "'so highly extraordinary or improbable as to be wholly beyond the range of expectability'" (quoting *Jones v. Leon*, 3 Wn. App. 916, 926, 478 P.2d 778 (1970))). Whether the term "likely" or the term "foreseeable" is used, the concept is the same: the landowner's duty is to protect invitees from harm that can be *reasonably anticipated* to arise. As comment f to *Restatement* section 344 explains, "If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

In response to the first certified question, I would reaffirm our holding in *Nivens* that Washington law is "consistent with" section 344 of the *Restatement*. *Id.* at 204. I therefore turn to the second certified question, which asks whether evidence of prior similar acts is required to meet the *Restatement*'s test.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the ~~McKown (Brendan) v. Simon Prop. Group, Inc., et al.~~ 87722-0 com/clients/wareports/.

> *(2) To create a genuine issue of material fact as to the foreseeability of the harm resulting from a third party's criminal act when the defendant did not know of the dangerous propensities of the individual responsible for the criminal act, must a plaintiff show previous acts of similar violence on the premises or can the plaintiff establish reasonably foreseeable harm through other evidence?*

The answer to this question is no. The majority seems to agree. It acknowledges the *Restatement* contemplates two kinds of situations giving rise to a duty and does not require notice to be based solely on prior similar acts. Majority at 13; *see also id.* at 20 ("proving acts of similar violence may not be the only way for a plaintiff to establish a duty as provided in the *Restatement*"). Comment f recognizes a landowner may "know or have reason to know . . . that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual." RESTATEMENT § 344 cmt. f. And that notice may be based on either "past experience" or "the place or character of [the] business." *Id.* Notably, the *Restatement* does not artificially limit what evidence constitutes "past experience." Nor does it narrowly define "past experience" to require prior similar acts on the same premises during the current owner's tenure. Rather, the *Restatement* takes a commonsense approach to evaluating past experience, and its comments and illustrations make clear that foreseeability may be established through a broad range of evidence.

Unfortunately, the lower appellate court opinions the Ninth Circuit identified read the *Restatement* too restrictively, applying a rote rule demanding proof of prior similar acts on the same premises. *See Wilbert*, 90 Wn. App. 304; *Fuentes v. Port*

*of Seattle*, 119 Wn. App. 864, 82 P.3d 1175 (2003); *Craig v. Wash. Trust Bank*, 94 Wn. App. 820, 976 P.2d 126 (1999); *Raider v. Greyhound Lines, Inc.*, 94 Wn. App. 816, 975 P.2d 518 (1999). These cases at best overstate the significance of prior acts and at worst recast what is intended to be a flexible standard as a one-size-fits-all test. Having rejected proof of prior similar acts as a prerequisite to establishing foreseeability, we should reject this approach. This court has consistently recognized that a wide array of evidence may be relevant to establishing the scope of a duty owed. In *Miller*, we allowed "[e]vidence of conduct of patrons on prior occasions . . . to show similar conduct could reasonably have been anticipated." 58 Wn.2d at 884-85. In *Niece*, we explained the question of foreseeability should go to the jury based on evidence showing the defendant was on notice of harm, including prior similar acts, prior business decisions, advice from risk assessors, and legislative recognition. 131 Wn.2d at 50-51 & n.10. In *McLeod*, we rejected the notion that foreseeability requires evidence of a specific type of prior incident as "unjustifiably restrict[ive]." 42 Wn.2d at 321. We explained that "the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable" but "[r]ather, the question is whether the actual harm fell within a general field of danger which should have been anticipated." *Id.*

Other lower courts have correctly observed that while prior similar acts are among the best evidence available to demonstrate that a business owner is on notice of a risk of harm to invitees, they are not the only relevant evidence. *See, e.g.,*

*Passovoy*, 52 Wn. App. at 172-73 (recognizing a business may be on notice that a shoplifter confronted by store detectives could cause harm to invitees, though no such harm had occurred on the premises in the past); *Griffin v. W. RS, Inc.*, 97 Wn. App. 557, 567-70, 984 P.2d 1070 (1999) (holding business may be on notice of harm posed by intruder against invitee, even when no intruder had been identified and there had been no prior acts on the premises), *rev'd on different grounds*, 143 Wn.2d 81, 18 P.3d 558 (2001).

Requiring evidence of prior similar acts as a prerequisite to suit would disserve the social interests of tort law. Courts have recognized that requiring such proof would give businesses "one free assault" and remove any incentive to take reasonable precautions against otherwise foreseeable criminal harm to invitees. *See, e.g., Doe v. Grosvenor Ctr. Assocs.*, 104 Haw. 500, 92 P.3d 1010, 1021 (2004) (holding foreseeability is based on the totality of the circumstances not on a mechanical prior similar incidents rule); *Bass v. Gopal, Inc.*, 395 S.C. 129, 716 S.E.2d 910, 914 (2011) (rejecting prior criminal incidents as the sine qua non of determining foreseeability). Moreover, it would suggest, absurdly, that a business owner who relocates after an incident occurs no longer owes a duty to use reasonable care, insofar as he has no past experience of prior acts on the new premises. Even states that embrace a modified similar acts test have not gone so far. *See Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 679 n.7, 863 P.2d 207, 25 Cal. Rptr. 2d 137 (1993) (recognizing that while a duty to supply security guards may require

-12-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

evidence of prior similar acts under California's sliding scale foreseeability inquiry such act need not be on the same premises), *disapproved on another point in Reid v. Google, Inc.*, 50 Cal. 4th 512, 527, 235 P.3d 988, 113 Cal. Rptr. 3d 327 (2010), *and superseded by statute on another point as recognized in Saelzler v. Advanced Grp. 400*, 25 Cal. 4th 763, 767-68, 23 P.3d 1143, 107 Cal. Rptr. 2d 617 (2001).

Under Washington law, the scope of a business owner's duty remains a question about what risks a reasonable person should anticipate and protect against, not simply what has passed. Once business owners have notice of a likely risk of harm to their invitees from third parties, they have a duty to take reasonable precautions to protect against such harm. Our precedent rejects a bright line test for foreseeability that would require evidence of prior similar acts on the same premises during the defendant owner's tenure.

This is wholly consistent with the *Restatement* approach. Under the *Restatement*, a business owner may be on notice of the risk of harm at all of his business locations following harm at one, so long as the premises are similar in operation and appearance. Likewise, prior experiences that do not lead to criminal charges—such as rowdy or boisterous crowds related to a sports game or a holiday— *may* put a business on notice of the likelihood of criminal assaults at subsequent events. *See* RESTATEMENT § 344 illus. 1, 2. Additionally, information provided by invitees and known to the landowner *may* put the landowner on notice of the likelihood of harm, even when no harm has occurred in the past. *See Griffin*, 97 Wn.

For the current opinion, go to http://www.lexis.com/clients/wareports/.

*McKown (Brendan) v. Simon Prop. Group, Inc., et al.,* 87722-0
(Stephens, J. Concurrence)

App. at 567-70; *Johnson v. State*, 77 Wn. App. 934, 942-43, 894 P.2d 1366 (1995). There are doubtless other examples.

Importantly, our adoption of the *Restatement*'s test does not equate to McKown's suggestion that the foreseeability of harm may be established solely based on the "place or character" of the defendant's business. *See* RESTATEMENT (SECOND) OF TORTS § 344 cmt. f. While the jury may properly consider the character of a business in determining whether a criminal act at a nearby establishment with similar patrons made a particular act on defendant's premises more likely, the place or character of the business cannot be the sole consideration. We have recognized that mere statistical evidence, such as a higher crime rate in a particular city or neighborhood, or a higher crime rate among similar businesses nationwide or statewide, is insufficient to support the imposition of a duty. *See Kim v. Budget Rent A Car Sys.*, 143 Wn.2d 190, 199, 15 P.3d 1283 (2001) (noting that "this court has rejected utilization of high crime rates as a basis for imposing a tort duty"); *Hutchins*, 116 Wn.2d at 236 (reasoning that imposing a duty on defendants in light of statistical crime rates "could result in the departure of businesses from urban core areas—an undesirable result"). Nor is the notice requirement satisfied merely by media reports of crime in a region, city, or neighborhood, or by evidence that persons in the area subjectively believe that crime is more prevalent there than in other areas. *See* Franklin D. Gilliam, Jr. & Shanto Iyengar, *Prime Suspects: The Influence of Local Television News on the Viewing Public*, 44 AM. J. POL. SCI. 560, 560, 567-68 (2000)

(reporting that crime accounts for more than 75 percent of all news coverage in certain cities and that viewers' attitudes about crime vary depending on the race of the alleged perpetrators).

Our negative answer to certified question two does not mean that liability is a foregone conclusion. A landowner's duty is to exercise *reasonable care*; this does not translate into a duty to take extraordinary measures or become an insurer of patrons' safety. As with all areas of negligence law, "[t]he financial burden, technical considerations, and other factual circumstances are all factors to be considered in determining whether or not [the defendant] complied with its duty to use reasonable care." *Bergland v. Spokane County*, 4 Wn.2d 309, 319, 103 P.2d 355 (1940); *see Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002) (outlining the elements of negligence). Foreseeability remains a limitation on a business owner's duty; it is not a proxy for liability.

Having adopted comments d and f to section 344 of the *Restatement* and having rejected a rigid prior similar acts test as inconsistent with the *Restatement* and Washington law, I would not delve into the third certified question. The majority unnecessarily opines on the strict requirements of a test it recognizes is not exclusive in the first instance. It is enough to recognize that a range of evidence may be appropriate to establish foreseeability based on the *Restatement*'s notice principle. Some evidence will undoubtedly weigh more heavily than other evidence,

-15-

but our cases and the illustrations provided in the *Restatement* supply a variety of scenarios sufficient to give guidance.

With respect to the second certified question, I would state our holding in plain terms: to create a genuine issue of material fact as to the foreseeability of harm, a plaintiff need not always present evidence of prior similar acts. A plaintiff must present evidence from which reasonable minds could find the defendant knew or had reason to know the harm was likely to occur. Simply put, "prior similar acts on the same premises" is not a litmus test for foreseeability. *See* RESTATEMENT (SECOND) OF TORTS § 344 cmt. f.

## CONCLUSION

I would answer the first two certified questions as follows:

(1) Washington law follows *Restatement (Second) of Torts* section 344, including comments d and f, as the test for determining a business owner's duty to its invitees.

(2) Washington law rejects a rigid "prior similar acts" test as a prerequisite for determining foreseeability. Although prior acts on the same premises may be relevant to whether the landowner was on notice of a foreseeable risk of harm to its invitees, proof of such acts is not necessary to create genuine issue of material fact.

In light of these answers to questions (1) and (2), it is unnecessary to answer the third certified question.

For the *McKown (Brendan) v. Simon Prop. Group, Inc., et al.*, 87722-0 om/clients/wareports/.
(Stephens, J. Concurrence)

Stephens, J.

González, J.

*McKown (Brendan) v. Simon Prop. Group, Inc., et al.*, 87722-0 com/clients/wareports/.
(Stephens, J. Concurrence)

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 87722-0

WIGGINS, J. (concurring)—The United States Court of Appeals for the Ninth Circuit certified three questions to this court in order to determine whether Washington State adopted section 344 of the *Restatement (Second) of Torts* (1965) and, if so, to determine the contours of the duty imposed on business owners. I concur with the answers given in the majority opinion. I also concur with the majority to the extent that it holds that Washington imposes a duty upon business owners to either warn or protect invitees from third party harm when such harm is occurring or likely to occur.

I agree with the majority that we must impose meaningful and reasonable limits on the duty to protect against the criminal acts of others. Overly broad liability would essentially require business owners to take the government's police power into their own hands, creating a de facto private police force to protect invitees. Moreover, broad liability would deter businesses from operating in high crime areas, resulting in further deterioration in economically challenged neighborhoods. Such perverse incentives would sow the seeds of social harm.

Fortunately, the drafters of section 344 recognized this as an extension of liability from common law and, accordingly, limited the circumstances giving rise to liability. Section 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are *likely* to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

RESTATEMENT § 344 (emphasis added).

Section 344 is, to put it charitably, dense, and subsections (a) and (b) must be read together. Subsection (a) imposes a duty to discover that harmful acts are either "being done" or are "likely to be done." *Id.* Subsection (b) imposes a duty to warn or protect visitors against "the harm." What is "the harm"? It is harm resulting from acts "being done" or "likely to be done." Acts "being done" can refer to actions that are recurring on the premises on a regular basis or it can refer to contemporaneous acts, i.e., actions that are occurring at the moment of failure to discover.

The owner must also protect against acts that are not yet "being done" but that are "likely to be done." It is this requirement—that the acts are "likely to be done"—that provides the key limitation on the owner's liability for the criminal acts of third persons.

In other words, a business owner is liable for failing to exercise reasonable care to either *warn or protect* visitors (subsection (b)) when the possessor discovers that harmful acts are either *occurring or are likely to occur* (subsection (a)). Subsection (a) establishes a duty to learn of or anticipate harmful acts. But liability does not attach for mere failure to discover. A possessor who fails to take reasonable steps to

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

discover might fail to meet his or her duty, but liability would attach only if the oversight caused harm to the plaintiff. To evaluate causation, we turn to subsection (b), which asks whether reasonable care requires the possessor to warn or take protective measures. Under subsection (b), liability attaches if taking reasonable measures would have prevented the harm. In other words, we should read subsections (a) and (b) together to determine the scope of liability. Subsection (b) applies once the premises owner meets the requirements of subsection (a)—i.e., once he or she knows or has reason to know that harmful acts are being done or are likely to be done.

The use of the term "likely" to limit liability is of particular importance because it suggests a significant probability of occurrence. *Webster's* defines "likely" as being "of such a nature or so circumstanced as to make something probable" and deems something "probable" when it "is based on or arises from adequate[,] fairly convincing[,] though not absolutely conclusive[,] intrinsic or extrinsic evidence or support." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310, 1806 (2002).

Consistent with *Webster's*, we should define "likely" to mean that the harmful act of a third party is more probable than 50 percent; this limits the scope of duty for business owners, imposing liability *only* when the act was likely to occur. In order to cross this threshold, the plaintiff must present evidence showing that the defendant knew, or should have known,[1] that the harm was likely to occur. Section 344 and its

---

[1] Section 344, comment f says, in relevant part, that the possessor "*may . . . know or have reason to know . . .* that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor . . . ." RESTATEMENT § 344 (emphasis added).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

attendant comments, by their terms, do not require a prior similar incident. Nor should we require a prior similar incident. However, prior similar incidents could support a finding that subsequent acts were likely to occur.`

The majority opinion and concurring opinion (Stephens, J.) acknowledge that liability arises only for an event that is imminent or presently occurring or is *likely* to occur. Majority at 13 ("comment f, like section 344 itself, contemplates two kinds of situations that may give rise to a duty—the first is where the landowner knows or has reason to know of immediate or imminent harm, and the second is where the possessor of land knows, or has reason to know, based on the *landowner's past experience*, the *place* of the business, or the *character* of the business, there is a likelihood that harmful conduct of third parties will occur on his premises"); concurrence (Stephens, J.) at 5 ("Liability cannot be imposed unless the landowner is on notice of likely harm."), 13 ("Once business owners have notice of a likely risk of harm to their invitees from third parties, they have a duty to take reasonable precautions to protect against such harm.").

While I agree with the majority's analysis of foreseeability, it is important to consider as well the section 344 requirement that harm be likely. This is necessary because an injury that is foreseeable may or may not arise from an event that is likely. We made this point clearly in *Ayers v. Johnson & Johnson Baby Products Co.*, 117 Wn.2d 747, 818 P.2d 1337 (1991). There we rejected the defendant's argument that the Washington product liability act equated foreseeability with likelihood:

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

foreseeability is a matter of what the actor knew or should have known under the circumstances; it turns on what a reasonable person would have anticipated. The likelihood, or probability, that an event would occur, on the other hand, does not depend on what a reasonable person would have anticipated under the circumstances, but on an assessment of all relevant facts, including those available only in hindsight. Thus harm might be likely but unforeseeable, or foreseeable but unlikely.

*Id.* at 764.

Foreseeability is not the same as likelihood because the two terms refer to different concepts. An injury is foreseeable if "[t]he hazard that brought about or assisted in bringing about the result [is] among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent." *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969). Or, as we stated in *McLeod v. Grant County School District No. 128*, "'The sequence of events, of course, need not be foreseeable. The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present.'" 42 Wn.2d 316, 322, 255 P.2d 360 (1953) (quoting FOWLER VINCENT HARPER, A TREATISE ON THE LAW OF TORTS § 7, at 14 (1933)). In other words, while "foreseeable" refers to whether the harm was within the general danger created, "likely" within the context of section 344 refers to whether the actions of a third party actor were probable.

Foreseeability remains a necessary inquiry, certainly. I would adopt the majority's foreseeability analysis while also requiring that the plaintiff show that the harm was likely. Mere foreseeability is insufficient—the plaintiff must also show that

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the harm was *likely*. Such a reading is consistent with public policy and the language and comments to section 344.

## CONCLUSION

In light of the foregoing, I concur in the majority opinion's answers to the three certified questions as follows:

(1)     Yes, Washington adopted section 344 of the *Restatement (Second) of Torts* (1965), including comments d and f, as controlling law.

(2)     No, proof of prior similar incidents is not required to determine the reasonable foreseeability of harm resulting from a third party's criminal acts. I would hold, however, that facts establishing both a reasonable foreseeability and a likelihood of the harmful criminal acts of a third party are necessary for the inquiry as to whether a possessor has a duty to protect its invitees from the harm.

(3)     We need not reach question three because proof of prior similar incidents is not required.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*McKown v. Simon Prop. Grp., Inc.*
Wiggins, J., concurring

I concur.

_____
Wiggins, J.