**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MADELEINE BARLOW,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>STATE OF WASHINGTON,<br>DBA Washington State<br>University,<br>*Defendant-Appellee.* | No. 21-35397<br><br>D.C. No.<br>3:20-cv-05186-BHS<br><br>ORDER CERTIFYING<br>QUESTIONS TO THE<br>WASHINGTON<br>SUPREME COURT |

Filed June 23, 2022

Before:  Danny J. Boggs,[*] Andrew D. Hurwitz, and
Jennifer Sung, Circuit Judges.

Order

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Certification of Questions to State Supreme Court

In an appeal from the district court's grant of summary judgment to defendant University of Washington on Title IX and common law negligence claims, the panel certified to the Washington Supreme Court the following questions concerning the negligence claim:

> 1. Does Washington law recognize a special relationship between a university and its students giving rise to a duty to use reasonable care to protect students from foreseeable injury at the hands of other students?
>
> 2. If the answer to question 1 is yes, what is the measure and scope of that duty?

In a concurrently-filed memorandum disposition, the panel affirmed the district court's summary judgment on the Title IX claim.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Meaghan Driscoll and Amanda M. Searle, Connelly Law Offices PLLC, Tacoma, Washington; Philip A. Talmadge, Talmadge/Fitzpatrick, Seattle, Washington; for Plaintiff-Appellant.

Robert W. Ferguson, Attorney General; Brian J. Baker and Brendan M. Lenihan, Assistant Attorneys General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Defendant-Appellee.

Rebecca J. Roe, Schroeter Goldmark & Bender, Seattle, Washington; Chloe M. Neely, Fierberg National Law Group, Traverse City, Michigan; for Amicus Curiae National Center for Victims of Crime.

**ORDER**

Madeleine Barlow appeals the district court's grant of summary judgment to defendant University of Washington (University) on her Title IX and common law negligence claims. We have jurisdiction pursuant to 28 U.S.C. § 1291. In a Memorandum Disposition filed concurrently with this order, we affirm the district court's grant of summary judgment to the University on Barlow's Title IX claim. Barlow's remaining negligence claim turns on an important and unresolved issue of Washington state law: whether a university owes a duty of care to protect a student against foreseeable harm by another student. Accordingly, we respectfully ask the Washington Supreme Court to exercise its discretion to decide the certified questions set forth below.

## I.

Before addressing the certified questions, we summarize the relevant facts. Plaintiff Madeleine Barlow started college as a freshman at the University's main campus in Pullman, Washington. Barlow had been on campus for only a few days when she was raped by another student, senior Thomas Culhane. Before Culhane raped Barlow, two students had made complaints to the University alleging sexual misconduct by Culhane at the University's satellite campus in Vancouver. The first student complained that Culhane repeatedly made unwanted sexual advances toward her. The second student complained that Culhane subjected her to unwanted physical touching, and later complained that Culhane continued to harass her. Because those complaints, and the University's actions in response, are at the center of this appeal, we describe them in more detail below.

D.S. reported misconduct by Culhane about one year before Barlow was raped.[1] D.S. told officials at the University's Office of Equal Opportunity that Culhane sent her unwanted pictures of his genitals and made sexual innuendos online, and that he made every effort to sit next to her in class. D.S. opted not to pursue a formal investigation or file a police report. Instead, she asked that someone talk to Culhane and tell him not to talk to her. A University official, Helen Gregory, spoke with Culhane a few days later and advised him that further unwanted interactions would lead to sanctions greater than a "lecture." The University then closed D.S.'s case.

---

[1] To protect the privacy of non-party students, we refer to them by their initials.

The second student, Q.R., reported that Culhane had subjected her to unwanted physical contact on a University-sponsored surfing trip. The trip occurred just four days after Gregory had spoken with Culhane. Culhane became intoxicated during the trip, and during the car ride back to Vancouver, Culhane sat uncomfortably close to Q.R. in the back seat of a vehicle and touched Q.R.'s legs and thighs even after Q.R. told him to stop. Q.R. reported the incident to police and to the University about one month after D.S.'s complaint. Like D.S., Q.R. initially declined to pursue a formal investigation. Several months later, however, Q.R. reported to the University that Culhane had continued to harass her, including during another student recreational trip. Q.R. then asked the University to open a formal Title IX investigation.

The University began its investigation shortly thereafter. Less than two months after the investigation began, Culhane applied to transfer from the University's Vancouver campus to its main campus in Pullman. The University granted his transfer request one week later. It was the University's policy to grant transfer requests as a matter of course, even for students under investigation. The University would deny a transfer request only if the student was barred from registering, for instance if the student had been expelled. When the University investigator informed Q.R. that Culhane was transferring to the University's main campus, Q.R. warned the investigator that a transfer would not "fix the problem," and she expressed concern about the risk Culhane posed on a campus with more dorms and more access to alcohol.

The University subsequently found that Culhane had violated its student conduct policy against sexual harassment by nonconsensually touching Q.R. Before deciding what

sanctions to impose, student-conduct officer Adam Jussel exchanged emails with Gregory and asked for more information about the D.S. complaint. Gregory shared that Culhane "has a hard time with appropriate social boundaries" and did not recognize when he needs to "step away from certain situations rather than forcing himself on others." Gregory also noted that Culhane's misconduct against Q.R. occurred only a few days after she had advised Culhane to stop engaging in unwanted interactions. Jussel ultimately imposed the following sanctions: (1) a nine-day suspension; (2) an alcohol-dependency assessment; (3) an educational assignment to write a research and reflection paper; (4) disciplinary probation through graduation; (5) writing of a reflective probation statement; and (6) no contact with Q.R. for two years. In August 2017, approximately two weeks before Culhane raped Barlow, Jussel reviewed and rejected the first draft of Culhane's research and reflection paper because Culhane continued to misunderstand the concept of consent, particularly when someone lacks mental capacity to consent. Culhane was instructed to rewrite the paper.

On August 19, Barlow, an incoming freshman, attended an "apartment warming" party at Culhane's off-campus apartment and became extremely intoxicated. In the early morning hours of August 20, after the other partygoers had left or gone to sleep, Culhane repeatedly raped Barlow.

Barlow filed a Title IX complaint against Culhane. The University investigated and ultimately expelled Culhane. His expulsion was upheld in an administrative appeal. A Washington state jury later convicted Culhane of second-degree rape.

Barlow then sued the University, alleging common-law negligence and a violation of Title IX. Barlow took no issue

with the University's handling of her Title IX complaint. Rather, she claimed that the University mishandled supervising and sanctioning Culhane for his prior misconduct against Q.R. and D.S., which she claimed put her at an increased risk.

The University moved for summary judgment on all of Barlow's claims. The district court granted summary judgment on Barlow's negligence claim because it concluded that the University did not owe Barlow a duty to protect her from harm by Culhane.

## II.

On Barlow's appeal from the grant of summary judgment in favor of the University, we must determine whether, under Washington law, a university owes students a duty to use reasonable care to protect them from foreseeable injury by other students. Resolution of this issue is necessary to our decision. Further, this critical issue of state law is unsettled and has important public-policy ramifications.

Washington law permits certification from a federal court when, in the opinion of the court, "it is necessary to ascertain the local law of [Washington] in order to dispose of such proceeding and the local law has not been clearly determined." Wash. Rev. Code § 2.60.020.

The Washington Supreme Court has not addressed whether a university owes a duty of care to its students to protect them from foreseeable harm by other students. The Washington Court of Appeals, however, has held that a university is not in a special relationship with its students and thus has no duty to protect students against third party harm solely by virtue of the students' enrollment status.

*Johnson v. State*, 894 P.2d 1366, 1369–70 (Wash. Ct. App. 1995), *rev. den.* 904 P.2d 299 (Wash. 1995). The court declined to extend precedent finding a special relationship between primary and secondary schools and their students, because college attendance is not mandatory, and "[c]ollege students are adults and generally are not in the protective custody of their parents." *Id.* at 1369. The University argues that a straightforward application of *Johnson* resolves this case. We conclude, however, that *Johnson* does not resolve the issues in this case, for the following three reasons.

First, in the 30 years since *Johnson* was decided, the law on special relationships has shifted, as reflected in the Restatement (Third) of Torts. Specifically, the Third Restatement recognizes that all schools, including universities, have a special relationship with their students that gives rise to a duty to protect against third-party conduct, a duty that is proportional to the scope of the relationship. RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM §§ 40(b)(5), cmt. l (2012). Other states have adopted this approach and found a special relationship between a university and its students. *Helfman v. Ne. Univ.*, 149 N.E.3d 758, 767–68 (Mass. 2020); *Regents of the Univ. of Cal. v. Superior Ct.*, 413 P.3d 656, 667 (Cal. 2018). Those courts rejected the proposition that college students are fully independent, noting that their "right to privacy and desire for independence may conflict with their immaturity and need for protection," *Helfman*, 149 N.E.3d at 769–70 (citing *Dzung Duy Nguyen v. Mass. Inst. of Tech.*, 96 N.E.3d 128, 142 (Mass. 2018)), and that universities are heavily involved in many aspects of student life by providing housing, food, social, athletic, and cultural opportunities, *id.* at 769. While the Washington Supreme Court has not adopted the Third Restatement as it pertains to special relationships, it has adopted several other sections of that Restatement. *See, e.g.*

*Ruiz-Guzman v. Amvac Chem. Corp.*, 7 P.3d 795, 800 (Wash. 2000) (products liability); *Jordan v. Nationstar Mortg. LLC*, 374 P.3d 1195, 1200 (Wash. 2016) (premises liability); *Volk v. DerMeerleer*, 386 P.3d 254, 271–72 (Wash. 2016) (psychiatrist's duty to warn of dangerous patient).

Second, *Johnson* does not address whether a university owes a duty when the university has a relationship with both the victim and the bad actor because both are students. In *Johnson*, the university had no apparent relationship with the bad actor, 894 P.2d at 1368, whereas here, both Culhane and Barlow were University students when Culhane raped Barlow. In *C.J.C. v. Corporation of Catholic Bishop of Yakima*, 985 P.2d 262, 276 (Wash. 1999), the Washington Supreme Court concluded that a church owed a duty of reasonable care to act affirmatively to prevent harm to children of the congregation in view of the church's relationship to the plaintiffs, its relationship to the bad actor, and the church's knowledge about the bad actor. Even assuming that the University's relationship with Barlow alone is not sufficient to give rise to a duty of care, it is unclear whether the combination of the University's relationships with Barlow and Culhane could create a duty to protect Barlow from Culhane.

Third, *Johnson* does not address the relevance of the University's knowledge of Culhane's prior misconduct and risk of future misconduct in addressing the existence of a duty of care. In *C.J.C.*, the court considered the church's knowledge of the risk of harm posed by the bad actor when concluding that the church owed the plaintiffs a duty. *Id.* Here, the undisputed evidence in the summary-judgment record shows that, at the time of Barlow's rape, the University had investigated and sanctioned Culhane for

sexual misconduct, and at least two University officials, Jussel and Gregory, had found that Culhane lacked an understanding of consent.

We recognize the burden that certifying a question imposes on a state court. However, certification is "particularly appropriate" where, as here, the issues of law are not only unsettled but also have "significant policy implications." *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015) (internal quotation marks and citation omitted). Public policy may be a significant consideration when determining whether to impose a duty under state law. *See, e.g.*, *C.J.C.*, 985 P.2d at 276 (considering "the strong public policy in favor of protecting children against acts of sexual abuse"). Further, resolution of the certified questions could have a significant impact on Washington universities and students. Given the significance of the policy issues implicated by Barlow's negligence claim and the unsettled state of the law, we conclude that certification is the most appropriate course of action.

## ORDER

We respectfully certify to the Washington Supreme Court the following questions:

(1) Does Washington law recognize a special relationship between a university and its students giving rise to a duty to use reasonable care to protect students from foreseeable injury at the hands of other students?

(2) If the answer to question 1 is yes, what is the measure and scope of that duty?

We do not intend the phrasing of those questions to restrict the Washington Supreme Court's consideration of the issues. We acknowledge that the court may, in its discretion, reformulate the questions. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999); *Lenhardt v. Ford Motor Co.*, 683 P.2d 1097,1098 (Wash. 1984).

If the Washington Supreme Court accepts review of the certified questions, we designate appellant Barlow as the party to file the first brief pursuant to Washington Rule of Appellate Procedure 16.16(e)(1).

The Clerk of Court is hereby ordered to transmit forthwith to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to the Revised Code of Washington sections 2.60.010(4), 2.60.030(2) and Washington Rule of Appellate Procedure 16.16.

Further proceedings in this court on the certified questions are stayed pending the Washington Supreme Court's decision on whether it will accept review and, if so, receipt of the answer to the certified questions. The case is withdrawn from submission, in pertinent part, until further order from this court. The Clerk is directed to administratively close this docket, pending further order. This panel will resume control and jurisdiction upon receipt of an answer to the certified questions or upon receipt of the Washington Supreme Court's decision to decline to answer the certified questions.

When the Washington Supreme Court decides whether to accept the certified questions (or orders briefing on the questions), the parties shall promptly file a joint report

informing us of the decision. If the Washington Supreme Court accepts certification, the parties shall also promptly file a joint status report notifying us when briefing has been completed; when a date is set for oral argument before the Washington Supreme Court; and when that Court has rendered an opinion.

It is so **ORDERED**.

/s/ Mary H. Murguia
Chief Judge Mary H. Murguia
U.S. Court of Appeals for the Ninth Circuit