**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMIE DRAMMEH; YUSUPHA CEESAY, Individually and as surviving parents of Cherno Ceesay; MARAM CEESAY, Personal Representative of the estate of Cherno Ceesay, | No. 22-36038 D.C. No. 2:21-cv-00202-BJR |
| *Plaintiffs-Appellants*, v. UBER TECHNOLOGIES, INC., a Delaware corporation; RASIER, LLC; DOES, 1-100, inclusive, | ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF WASHINGTON |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Argued and Submitted March 26, 2024
San Francisco, California

Filed June 24, 2024

Before: Richard A. Paez, Jacqueline H. Nguyen, and
Patrick J. Bumatay, Circuit Judges.

## SUMMARY[*]

### Certification Order / Washington Law

The panel certified the following questions to the Washington Supreme Court:

1. Under Washington law, does a rideshare company have a special relationship with its drivers giving rise to a duty to use reasonable care in matching drivers with riders to protect against riders' foreseeable criminal conduct?

2. Under Washington law, was an attempted carjacking and murder of a rideshare driver by a rider legally foreseeable?

3. If such a duty exists, what is the measure and scope of that duty?

## ORDER

Pursuant to Revised Code of Washington § 2.60.020, we respectfully certify the questions set forth below to the Washington Supreme Court. The answers to our certified questions are "necessary . . . to dispose of [our] proceedings." Wash. Rev. Code § 2.60.020.

This case involves the 2020 murder of an Uber driver by two Uber riders. The riders used a fake Uber account and an

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

anonymous form of payment with the intention of carjacking the driver's car. Tragically, the carjacking attempt failed, and the driver was killed. The central issue is whether Uber, the company, owes a duty of care to protect its drivers from criminal acts of the riders it pairs them with.

For the reasons we discuss below, we certify the following questions:

1. Under Washington law, does a rideshare company have a special relationship with its drivers giving rise to a duty to use reasonable care in matching drivers with riders to protect against riders' foreseeable criminal conduct?

2. Under Washington law, was an attempted carjacking and murder of a rideshare driver by a rider legally foreseeable?

3. If such a duty exists, what is the measure and scope of that duty?

We recognize that our phrasing of these questions does not restrict the court's consideration of the issues involved and that the court may rephrase the question as it sees fit. We agree to accept the court's answers.

I.

We briefly summarize the relevant facts. In December 2020, Cherno Ceesay ("Ceesay") was working as an Uber driver in the Seattle area. He was matched, through the Uber app, with a rider account under the name "Stephanie Tylor," requesting a ride in Issaquah, a suburb of Seattle. "Stephanie Tylor" did not exist; rather, it was a fake name used to create an Uber account by two individuals planning to carjack an

Uber driver's car. The email attached to the newly created Uber rider account was fake, and the payment method was a prepaid giftcard, which allowed the user to remain anonymous.

When Ceesay drove to the requested pickup spot, the individuals entered Ceesay's car and murdered him in a botched attempt to steal his car. The individuals were eventually caught, arrested, and prosecuted for the murder.

Uber's business model relies on pairing drivers with riders who wish to be transported between locations. Uber requires drivers to undergo background checks and other identity verification procedures, in addition to tests verifying their driving abilities. Unlike traditional taxis, Uber drivers mainly use their personal vehicles—though Ceesay was using a vehicle he rented through Uber's "Vehicle Marketplace."[1] And further distinguishing its ridesharing business from taxis, Uber prohibits street hailing, which allows it to retain exclusive control over the process of matching drivers with riders.

When Uber matches a driver with a rider, Uber controls the information both parties receive. Uber provides drivers with only the location and the username of the rider requesting the ride. Uber also provides riders with information about the driver, including the driver's "name, photo, location, vehicle information, and certain other information."

At the time of Ceesay's murder, Uber employed a program in Latin America called "Social Connect," which

---

[1] *See* Uber, *Vehicle Marketplace*, https://www.uber.com/us/en/drive/vehicle-solutions/ (offering "[c]ar rentals for gig workers" to "[d]rive with Uber") (last accessed Apr. 5, 2024).

required would-be riders who wanted to use anonymous forms of payment to undergo additional identity verification measures. Uber did not employ this program, or a similar one, in the U.S. at the time.

Uber had additionally undertaken research for a number of years into the use of recording devices ("dashcams") in Uber cars. Uber allows its drivers to use dashcams but does not require or provide them. If a driver is using a dashcam in their car, a rider is notified in the app.

Ceesay's estate filed this lawsuit in federal court against Uber Technologies, Inc., and Rasier, LLC (collectively, "Uber"), alleging that Uber's negligence caused Ceesay's wrongful death. In September 2022, the district court granted Uber's motion for summary judgment, concluding that Uber did not owe Ceesay a duty of care under Washington law and that the fatal assault on Ceesay was not legally foreseeable.

## II.

Washington law permits certification from a federal court when "it is necessary to ascertain the local law of [Washington] in order to dispose of such proceeding and the local law has not been clearly determined." Wash. Rev. Code § 2.60.020. In this appeal from the grant of summary judgment in favor of Uber, we must determine whether, under Washington law, a rideshare company owes its drivers a duty of reasonable care to protect them from foreseeable injury by the riders with whom the company pairs them. Washington law has not squarely addressed whether a special relationship exists between rideshare companies and their drivers that would give rise to such a duty of care. Resolution of the issue of duty is necessary to dispose of the present proceeding. And given the scope of the rideshare

industry, the question of duty presents a critical issue of state law that is unsettled and has important policy ramifications.

## A.

Washington law recognizes a "special relationship" exception to the general prohibition of imputing liability to an actor for the criminal acts of a third party. *See H.B.H. v. State*, 192 Wash.2d 154, 168–69 (2018). This exception arises where "a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315(b) (Am. Law Inst. 1965). When such a relationship exists, "the party owing a duty must use reasonable care to protect the victim from the tortious acts of third parties." *H.B.H.*, 192 Wash.2d at 169 (citing Restatement (Second) of Torts § 314A cmt. e).

Washington courts have applied this exception to liability to several relationships. Washington has adopted the "common examples" of protective special relationships, including "the relationships between schools and their students, innkeepers and their guests, common carriers and their passengers, and hospitals and their patients." *Id.* The Washington Supreme Court has extended the exception to cover relationships between a business and an invitee, *see Nivens v. 7-11 Hoagy's Corner*, 133 Wash.2d 192, 194 (1997), as well as between a group home for developmentally disabled individuals and its residents, *see Niece v. Elmview Group Home*, 131 Wash.2d 39, 41 (1997).

More recently, the Washington Supreme Court found a special relationship between the state's child custody agency and foster children. *H.B.H.*, 192 Wash.2d at 178. And Washington law recognizes a special relationship between employers and employees, *see Bartlett v. Hantover*, 9 Wash.App 614, 620–21 (1973), *rev'd on other grounds*, 84

Wash.2d. 426 (1974), and between a general contractor and subcontractor, *see Vargas v. Inland Washington, LLC*, 194 Wash.2d 720, 731 (2019). Washington courts, however, have not opined specifically on whether the special relationship exception extends to the relationship between rideshare companies and their drivers.

Washington law is clear on what factors must be present to constitute a special relationship. In *H.B.H.*, the Washington Supreme Court clarified that the inquiry revolved not necessarily around "physical custody," but rather around "vulnerability and entrustment." 192 Wash.2d at 173. The court reiterated this principle in *Barlow v. State*, 2 Wash.3d 583 (2024). Responding to a certification order from this court, there, the Washington Supreme Court concluded that "[i]f the relationship lacks the traits of dependence and control," no duty exists. *Barlow*, 2 Wash.3d at 593. In *Barlow*, the Washington Supreme Court ruled that a special relationship exists between universities and university students when a student is on campus "for school related purposes or participating in a school activity." *Id.* at 597.

When deciding whether to extend the special relationship exception to novel relationships, the Washington Supreme Court has looked at whether the relationship in question is analogous to any of the relationships Washington law currently recognizes. *See, e.g.*, *Niece*, 131 Wash.2d at 44–45 (finding a special relationship between a group home for disabled individuals and its residents, noting that it was "most analogous" to the recognized special relationship between a hospital and its patients).

Analogy to an existing relationship is not always enough to recognize a new special relationship, however. In 2021, the Washington Supreme Court declined to recognize a special relationship between the state's Department of Social & Health Services and recipients of the state's long-term care services. *Turner v. Wash. State Dep't of Soc. & Health Servs.*, 198 Wash.2d 273, 276–77 (2021). The court noted that the department "did not have complete control over the living options nor did it make the ultimate decision" regarding the recipient's living situation. *Id.* at 286.

Similarly, a Washington Court of Appeals declined to find a special relationship between an automobile driver and his passenger. *Lauritzen v. Lauritzen*, 74 Wash.App. 432 (1994). The court there emphasized that a certain level of entrustment was necessary to form a special relationship, and distinguished the relationship between a driver and his passenger from other recognized special relationships on the basis that the driver lacked the "control over access to the premises that [the person with a special duty] was obliged to protect." *Id.* at 440–41.

The plaintiffs in this case argue that because Washington recognizes a special relationship in both the employer-employee and contractor-subcontractor contexts, the relationship between a rideshare company and its drivers is a sufficiently analogous context to warrant extending the exception. Uber, on the other hand, contends that because Washington law is clear on the legal status of rideshare drivers as independent contractors, *see* Wash. Rev. Code § 49.46.300(1)(i), and because the Washington Supreme Court has been reluctant to extend the exception in recent cases like *Barlow* and *Turner*, the court would not extend the relationship here.

We believe that the Washington Supreme Court should be the first to answer the question of whether Uber owes a duty of care to its drivers when matching them with riders.

## B.

Under Washington law, a harm must also be legally foreseeable in order for a duty to arise. *See McKown v. Simon Prop. Grp., Inc.*, 182 Wash.2d 752, 762 (2015) ("foreseeability as a question of whether a duty is owed is ultimately for the court to decide"). In determining whether particular conduct was foreseeable, the Washington Supreme Court asks "'not whether the actual harm was of a particular kind which was expectable,'" but rather asks "'whether the actual harm fell within a general field of danger which should have been anticipated.'" *Meyers v. Ferndale Sch. Dist.*, 197 Wash.2d 281, 288 (2021) (quoting *McLeod v. Grant Cnty. Sch. Dist. No. 128*, 42 Wash.2d 316, 321 (1953)).

The Washington Supreme Court has held that one—but not the only—way a plaintiff can demonstrate legal foreseeability is by "proving acts of similar violence" that are (1) "sufficiently similar in nature and location to the" crime against the plaintiff, (2) "sufficiently close in time to the act in question," and (3) "sufficiently numerous." *McKown*, 182 Wash.2d at 774. In 2022, for example, the Washington Court of Appeals held that the sexual assault of a tenant by a third party was legally foreseeable to a landlord. *Brady v. Whitewater Creek, Inc.*, 24 Wash.App.2d 728, 751 (2022). There, the plaintiff alleged that she was raped by an individual who entered her upper-floor apartment without authorization, and that the landlord knew of a previous attempted unauthorized entry to an upper-floor balcony. *Id.* at 749. The court concluded that such knowledge "made this

conduct foreseeable," *id.* at 751, and reversed a grant of summary judgment to the landlord.

The plaintiffs in this case argue that Uber had sufficient knowledge that drivers were at risk of violence, including physical assaults, by riders, such that the attack on Ceesay would have been reasonably foreseeable to Uber. Uber, on the other hand, argues that the attack on Ceesay was not legally foreseeable because there were no "carjacking[s] in Issaquah . . . involving a premeditated plan to steal a car with a fake rider account using an anonymous payment method" on the Uber app. We believe that the Washington Supreme Court should be the first to answer the question of whether the alleged conduct is legally foreseeable, such that Uber would owe a duty of care to its drivers.

## III.

An answer to the question of duty is necessary to "dispose of [our] proceedings," Wash. Rev. Code § 2.60.020. If the district court was correct that Uber owes no duty to its drivers to protect them from the criminal acts of riders, the district court's grant of summary judgment to Uber will be affirmed. If a duty does exist, the district court's ruling as to that issue must be reversed and further proceedings would be necessary to resolve plaintiffs' claim. Thus, the answer given by the Washington Supreme Court is necessary to dispose of the current appeal. We respectfully request that the court answer the questions presented in this order.

We recognize that certifying questions imposes a certain burden on a state court. Certification, however, is "particularly appropriate" in situations like the one here, where unsettled issues of law have "significant policy implications." *Barlow v. State*, 38 F.4th 62, 66–67 (9th Cir.

2022) (citing *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015)).  Given the prevalence and scope of the rideshare industry, determining whether rideshare companies owe a duty of care in matching their drivers with riders could have a significant impact on rideshare drivers and the gig economy more generally.  We thus conclude that certification is appropriate here.

IV.

The names and addresses of counsel are:

*For Plaintiffs-Appellants Amie Drammeh, Yusupha Ceesay, and Maram Ceesay:* Brent Rosenthal, Law Offices of Brent Rosenthal, PC, 6617 Lakewood Blvd., Dallas, TX 75214; Corrie Yackulic, Corrie Yackulic Law Firm, PLLC, 110 Prefontaine Place S, Ste. 304, Seattle, WA 98104; Alexandra Caggiano, Brian Weinstein, Weinstein Caggiano, PLLC, 600 University St., Ste. 1620, Seattle, WA 98101.

*For Defendants-Appellees Uber Technologies, Inc., and Rasier LLC*: Julie L. Hussey, Perkins Coie, LLP, 11452 El Camino Real, Ste. 300, San Diego, CA 92130; Gregory F. Miller, Perkins Coie, LLP, 1201 Third Ave., Ste. 4900, Seattle, WA 98101.

V.

The Clerk of this court is hereby directed to file in the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to the Revised Code of Washington sections 2.60.010(4), 2.60.030(2) and Washington Rule of Appellate Procedure 16.16.

Further proceedings in this court on the certified question are stayed pending the Washington Supreme Court's decision on whether it will accept review, and if so, receipt of the answer to the certified question.  The case is withdrawn from submission, in pertinent part, until further order from this court.  The Clerk is directed to administratively close the docket, pending further order. This panel will resume control and jurisdiction upon receipt of the Washington Supreme Court's decision to decline to answer the certified questions.

When the Washington Supreme Court decides whether to accept the certified questions (or orders briefing on the questions), the parties shall promptly file a joint report informing us of the decision.  If the Washington Supreme Court accepts certification, the parties shall also promptly file a joint status report notifying us when briefing has been completed; when a date is set for oral argument before the Washington Supreme Court; and when that court has rendered an opinion.

It is so **ORDERED**.